UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
    Plaintiff,

vs.

WILLIAM COOL, et al.,
    Defendants.

Case No. 1:16-cv-515

Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

    Plaintiff initiated this action by filing a motion for leave to proceed *in forma pauperis* in connection with a pro se civil rights complaint brought pursuant to 42 U.S.C. § 1983. (Doc. 1). The undersigned subsequently found that the complaint submitted by plaintiff—a handwritten, rambling, approximately 99-page complaint against over 40 defendants—did not comply with Fed. R. Civ. P. 8(a), which requires the complaint to contain a short and plain statement of the claim. (Doc. 8). Plaintiff was ordered to file an amended complaint within twenty-one (21) days, setting forth in clear, short, and concise terms, the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each claim in no more than twenty pages. (*Id.* at PageID 287). Plaintiff has filed an amended complaint in compliance with the Court's Order.

    Plaintiff has previously been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the amended complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

2

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

The amended complaint submitted by plaintiff includes allegations against seventeen defendants, concerning incidents that occurred at the Southern Ohio Correctional Facility beginning on September 29, 2014. Plaintiff alleges that on that day, defendant correctional officer Swaney informed him that he was being moved to a different cell. (Doc. 12 at PageID 541–42). Plaintiff initially refused to move. Officer Swaney left and returned with defendant sergeant Perdas, who asked him why he did not want to move. According to plaintiff, he informed Perdas that he feared for his life due to inmates Bell and Stan, who he claimed were paying other inmates to physically harm him. Plaintiff was ordered by defendant Nolan, an

SOCF Unit Manager, to cuff-up or he would be pepper sprayed and the extraction team would drag him to the new cell assignment. Plaintiff indicates that he complied with the order before Nolan, Perdas, and Swaney escorted him to his new cell. Plaintiff told Nolan that he did not want to be moved to the top range because inmate Stan had paid inmates Garcia, Speakman, and Ward to attack him when he was moved. Nolan responded, "there you go snitching on people no wonder they all want to hurt you!" (*Id.* at PageID 542).

Plaintiff alleges that on October 2, 2014, while being escorted to the shower, inmate Garcia struck him on the head and shoulder with a sock full of batteries. (*Id.* at PageID 543). Plaintiff claims that following the attack, he refused to come out of the shower until he received medical attention and Garcia was removed. After being seen by the nurse—who provided him with ibuprofen and told him he would be seen by the doctor—officer Dyre came to remove plaintiff from the shower.

Plaintiff states that he sent defendants SOCF Unit Manager Chief Davis, SOCF Warden Morgan, and SOCF Institutional Inspector Mahlman an Informal Complaint Resolution (ICR),[1] informing them of the attack and the fact that he informed Nolan, Perdas, and Swaney that inmates Stan and Bell were paying inmates to attack him when he moved to the top range on September 29, 2014. (*Id.* at PageID 543–44). Morgan allegedly told plaintiff to resolve his issues with his unit staff. (*Id.*).

On October 23, 2014, plaintiff claims he was escorted to defendant Davis's office by Perdas for an interview on his request for protective custody. Plaintiff explained to Davis his

---

1 The filing of an Informal Complaint Resolution or ICR is the first step in the inmate grievance process. Ohio Admin. Code § 5120-9-31(K)(1).

4

reasons for requesting protective custody.[2] Plaintiff claims Davis stated that "all [his] problems was some 4/B beef due to every 4/B block I'm moved to I'm assaulted." (*Id.* at PageID 544). Davis informed him that he would not be getting protective custody, but that she would move him to the J-block. When plaintiff indicated that he wanted to appeal her decision, she told him that the interview was not for protective custody. (*Id.*).

On November 11, 2014, plaintiff filed an Informal Complaint Resolution with defendants Cool, the Deputy Warden of Operations, and Mahlman concerning his meeting with Davis and Perdas. (*Id.* at PageID 545). Cool responded to plaintiff that same day, also denying his request for protective custody. Plaintiff refiled his complaint, but ultimately was denied protective custody and was not permitted to appeal the decision. Plaintiff claims defendant Mahlman denied his claims in a disposition of grievance, which was affirmed by defendant Mona Parks, the "R.N. Assistant Chief Inspector over medical at SOCF." (*Id.* at PageID 538).

On February 4, 2015, plaintiff alleges that defendant officer Rogers gave inmate Starr a copy of plaintiff's disposition of grievance. (*Id.* at PageID 546). Plaintiff further claims that Starr read the disposition to the whole J-4 South block and then distributed it to inmates in other blocks. Plaintiff unsuccessfully sought relief via the grievance procedure. (*See id.* at PageID 546–47).

On March 6, 2015, plaintiff claims that defendant officers Johnson and Englehardt falsely told other inmates that plaintiff snitched on them by informing the captain that they had contraband in their cells. (*Id.* at PageID 547). Plaintiff also claims on March 7, 2015, that defendant officer Ferguson "told the whole J3 South that plaintiff was the snitch out loud

---

[2] In addition to his concern that inmates were being paid to attack him, he also told Davis and Perdas that other officers "allowed inmate Stan to harass me then go through my personal mail and get my family and friends addresses off my old incoming addressed envelopes, and u/m Nolan claiming I was a snitch to other inmates." (*Id.* at PageID 544).

5

repeatedly and stated they needed to get him out of the block." (*Id.* at PageID 548). In response, plaintiff alleges that he was threatened by a prison gang that they would make plaintiff pay for being a snitch and that "he was hit when he went out to SOCF 4/A population." (*Id.*). Plaintiff filed a grievance with defendant Mahlman, but claims that he never received a response. Plaintiff alleges that Mahlman did respond to a message he left on the phone help hotline, inquiring whether he had any proof that Englehardt, Johnson, and Ferguson told inmates he was a snitch. Plaintiff subsequently provided Mahlman a letter from an inmate whose cell was searched, who stated "I told you last weekend when you stopped me that the police said you were the reason they shook my cell down." (*Id.* at PageID 549. *See also* Doc. 1 at PageID 221). Plaintiff indicates that Mahlman did not respond to the letter or take any further action. Plaintiff also alleges that he showed the letter to defendant Unit Manager Oppie, but Oppie claimed the letter did not mean anything.

Next, plaintiff alleges that from April 23, 2015 to April 26, 2015, Officers Johnson, Englehardt, and Dail aided inmate Clark in harassing him. Plaintiff claims that Johnson was escorting inmate Clark as he passed out food trays. (*Id.* at PageID 549–50). When Clark gave plaintiff his food tray, he noticed the bread "had a very light mint green tint to it and as he brought the food tray closer to his nose he could smell a strong odor of state issued chemicals!" (*Id.* at PageID 550). Plaintiff further alleges that the main course as well as his salad also had chemicals in it. When plaintiff complained about the food to Johnson, he responded that if plaintiff did not like the food, not to eat it. According to plaintiff, he tried to preserve the contaminated food as evidence by placing it into a Ziploc bag and mailing it to this Court. However, he claims that Dail—who allegedly observed Clark and Johnson, but took no action— told Johnson that plaintiff was attempting to bag the contaminated food and Johnson took the

envelope from him. (*Id.* at PageID 549–51). When plaintiff later asked Johnson how he was going to mail it out without a cash slip attached to it, Johnson stated "who said anything about it getting mailed out!" (*Id.* at PageID 552). Plaintiff filed a grievance but did not receive a response. (*Id.* at PageID 552).

Based on the following factual allegations, plaintiff brings several claims. First, plaintiff claims defendants Morgan, Cool, Davis, Mahlman, Nolan, Oppie, Perdas, Swaney, Parks, and Goodman violated his Eighth and Fourteenth Amendment rights by exercising deliberate indifference to plaintiff's health and safety by failing to take corrective action or otherwise protect him from attacks by prisoners and from retaliation by officers. (*Id.* at PageID 552–56). Plaintiff also brings an Eighth Amendment claim against defendants Johnson, Englehardt, and Dail based on his allegation that these defendants encouraged and assisted inmate Clark to contaminate his food trays with chemicals. (*Id.* at PageID 541, 555). Plaintiff further claims that defendants Ferguson, Rogers, Johnson, and Englehardt were deliberately indifferent to his safety for allegedly informing other inmates that he is a snitch and/or providing other inmates with his grievance dispositions. (*Id.* at PageID 541, 555, 556). Finally, plaintiff alleges that Johnson violated his First Amendment rights when he destroyed his legal mail. (*Id.* at PageID 556).

Plaintiff seeks declaratory, injunctive, monetary relief. (*Id.* at PageID 557–58).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff's Eighth Amendment claims against defendants Swaney, Davis, Nolan, Perdas, Johnson, Englehardt, Dail, Ferguson, Cool, and Rogers are deserving of further development and may proceed at this juncture.[3] *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

---

[3] For the reasons stated below, plaintiff's First Amendment claim against Johnson and Fourteenth Amendment claims against all defendants should be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff has not included any factual allegations of wrongdoing against defendants Goodman, Warren, and Riddick, despite naming them as defendants in the complaint. Therefore, the complaint against these defendants should be dismissed.

Plaintiff's remaining claims should also be dismissed. First, plaintiff's claims against Morgan, Mahlman, Oppie, and Parks should be dismissed. Plaintiff seeks to hold these defendants liable based on their alleged failure to take corrective action in response to his grievances and/or complaints. However, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

To the extent that plaintiff wishes to hold any of these defendants liable in their supervisory capacity, it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tenn. Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee,* 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish,* 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or

8

knowingly acquiesced in the unconstitutional conduct of the offending officers"). Therefore, in the absence of any such allegation, plaintiff's claim that defendants Morgan, Mahlman, Oppie, and Parks failed to take corrective action after they were notified of plaintiff's concerns is simply insufficient to give rise to an actionable § 1983 claim.

Plaintiff's Fourteenth Amendment claims should also be dismissed. To the extent that plaintiff bases his claims on an alleged denial of due process in the grievance procedure, plaintiff fails to state a claim upon which relief may be granted because plaintiff has no constitutional right to an effective grievance procedure. *See, e.g., Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted,* 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000)). Therefore, the portion of the complaint alleging deficiencies in the prison grievance procedure should be dismissed.

Insofar as plaintiff claims he was denied due process of law in connection with the denial of protective custody status, plaintiff has also failed to state a claim upon which relief may be granted because inmates generally have no protected liberty interest in a specific security

classification. *See Dugas v. Wittrup*, No. 2:15-cv-67, 2015 WL 418070, at *6 n.7 (S.D. Ohio Jan. 30, 2015) (citing *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435, 438–39 (6th Cir. 2013); *Harbin–Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005)) (Report and Recommendation), *adopted*, 2015 WL 1056327 (S.D. Ohio Mar. 10, 2015). *See also Lindsey v. True*, No. 11-cv-2924, 2012 WL 1585902, at *3 (D. Colo. May 7, 2012) (finding the plaintiff's "placement in the general population instead of in protective custody does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life, nor does it implicate a liberty interest that arises directly under the Constitution because prisoners are not entitled to any particular degree of liberty"). Because plaintiff does not have a protected liberty interest under the circumstances alleged, his complaint fails to state a due process claim against these defendants. *See Yarbrough v. Hulick*, No. 07-816-MJR, 2008 WL 2410854, at *2 (S.D. Ill. June 11, 2008) (dismissing, pursuant to § 1915A, a prisoner's claim that he was denied due process of law in connection with the denial of his request to be placed in protective custody).

Plaintiff's First Amendment claim should also be dismissed. As noted above, plaintiff claims that defendant Johnson confiscated and destroyed a manila envelope containing allegedly contaminated food and a letter intended for the Clerk of Court. Under the First Amendment, prisoners have a fundamental right of access to the Courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial." *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 350–51). "Actual injury" is not shown "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being

prevented." *Root v. Towers,* No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000). "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Winburn,* 43 F. App'x at 733 (quoting *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996)).

In this case, plaintiff fails to allege facts showing that he suffered any actual injury as a result of the destruction of his legal materials. He has not alleged facts showing he has been unable to file court pleadings, missed court deadlines, or had a case dismissed in any nonfrivolous legal proceeding based on defendant Johnson's conduct. Absent such allegations, plaintiff's complaint fails to state a claim for relief for a denial of access to the courts under the First Amendment.

Accordingly, in sum, plaintiff's Eighth Amendment claims against defendants Davis, Swaney, Nolan, Perdas, Johnson, Englehardt, Dail, Ferguson, Cool, and Rogers are deserving of further development and may proceed at this juncture. Having found that plaintiff's remaining claims fail to state a claim upon which relief may be granted, these claims should be dismissed.

### IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's claims against defendants Morgan, Mahlman, Oppie, Parks, Goodman, Warren, and Riddick; his Fourteenth Amendment claims against all defendants; and his First Amendment claim against defendant Johnson be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

### IT IS THEREFORE ORDERED THAT:

1. The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendant Swaney, Davis, Nolan, Perdas, Johnson, Englehardt, Dail,

Ferguson, Cool, and Rogers, as directed by plaintiff, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: 11/1/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
    Plaintiff,

vs.

WILLIAM COOL, et al.,
    Defendants.

Case No. 1:16-cv-515

Barrett, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).