UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
Plaintiff,

Case No. 1:16-cv-00515
Barrett, J.
Litkovitz, M.J.

vs.

WILLIAM COOL, et al.,
Defendants.

REPORT AND
RECOMMENDATION

## I. Introduction

Plaintiff, an inmate incarcerated at the Southern Ohio Correctional Facility (SOCF), brings this pro se action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. This matter is before the Court on defendants' motion for summary judgment (Doc. 85) and plaintiff's response in opposition and supporting exhibits (Docs. 93, 94).

## II. Background

Plaintiff was granted leave to proceed *in forma pauperis* in this action on June 23, 2016. (Doc. 7). The undersigned issued an Order that same date finding that the original complaint submitted by plaintiff did not comply with Fed. R. Civ. P. 8(a)(2) and allowing plaintiff to file an amended complaint that complied with the Rule. (Doc. 8). Plaintiff filed an amended complaint on August 9, 2016. (Doc. 12). On *sua sponte* review, the Court granted plaintiff leave to proceed on certain Eighth Amendment claims, which are presently before the Court.[1] (Docs. 14, 62). First, plaintiff claims that defendants C/O Jeffrey Swaney, Cynthia Davis, Unit Manager Brian Nolan, C/O Scott Perdas (Pardis) and William Cool demonstrated deliberate indifference

---

[1] Several corrections officers who were named as defendants to these Eighth Amendment claims were not served and were dismissed from the case for lack of service by Order dated November 27, 2017. (*See* Doc. 75, dismissing defendants C/O Dail, C/O Johnson, C/O Rodgers and C/O Ferguson for lack of service).

to plaintiff's health and safety by failing to take corrective action or otherwise protect him from attacks by prisoners and from retaliation by officers. Second, plaintiff claims that defendants Davis, Perdas and Cool demonstrated deliberate indifference to his health and safety by denying his request for protective custody. Finally, plaintiff claims that defendant Michael Englehardt showed deliberate indifference to his health and safety by harassing him and encouraging and helping inmate Clark to contaminate his food trays with chemicals.

### III. Facts

In support of their motion for summary judgment, defendants have submitted interrogatory answers, incident reports, a medical exam report, grievance submissions, video footage, a conduct report, and other documents from Rules Infraction Board ("RIB") proceedings. (Doc. 85, exhibits). Plaintiff has submitted exhibits with his opposing memorandum, including defendant Perdas's answers to plaintiff's first set of interrogatories, the Ohio Department of Rehabilitation and Correction (ODRC) policy on Classification/Release of Protective Control Inmates, various complaints and grievance documents plaintiff submitted, and health services request forms. (Doc. 93-1; Doc. 94). Plaintiff has also provided the same medical exam report submitted by defendants. (Doc. 93-1 at 1).

Certain facts are undisputed, but many of plaintiff's factual allegations are disputed by the parties. This lawsuit arises out of incidents that occurred at SOCF primarily in September/October 2014 and April 2015. Plaintiff describes the following encounter he alleges took place on September 29, 2014: C/O Swaney came to plaintiff's cell and informed him that he was being moved to K2 North cell block, cell 39. (Doc. 12 at 4, 6). Plaintiff refused to move, so C/O Swaney left and returned to plaintiff's cell with Sergeant Perdas. (*Id.* at 6). Plaintiff told Perdas that he did not want to move because he "feared for his life due to his outside porter I/M

Stan aka Nuttie" and inmate Bell paying other inmates to physically harm plaintiff. (*Id.*). Perdas told plaintiff he could not stay in the present cell because it was a "P.C." ("protective custody") cell and to have his belongings packed by the time Perdas returned. (*Id.*). Approximately five minutes later, Perdas and Swaney returned to his cell with unit manager Nolan. (*Id.*). Nolan gave plaintiff a direct order to "cuff up" or he was going to pepper spray him, send in the extraction team, and have the team drag plaintiff to cell 39. At that point, plaintiff complied and was cuffed to be escorted to his new cell. As plaintiff was being escorted to K2 North, cell 39, Nolan asked plaintiff why he did not want to be placed on the top range. Plaintiff informed Nolan that "his outside porter I/M Stan AKA 'Nuttie Eye' had paid [i]nmates Garcia, Speakman and Ward to assault him when he was moved to the top range." (*Id.*). Nolan responded, "There you go snitching on people[,] no wonder they all want to hurt you!" (*Id.*).

Defendants do not agree with plaintiff's version of events surrounding the September 29, 2014 cell move. Swaney does not recall plaintiff telling Perdas and Nolan before he was ordered to "cuff up" in his cell that several inmates housed in K2 North were going to physically harm him. (Doc. 85-1, Exh. A, Swaney Interr. Ans. # 16). Swaney denies that plaintiff told Nolan as they were walking up the K2 North stairwell on September 29, 2014, that "Inmate John Doe Nuttie Eye" paid inmates Garcia, Speakman and Ward to assault him once he was moved to K2 North, cell 39. (*Id.*, Swaney Interr. Ans. # 19). Defendant Nolan denies that he was aware of plaintiff's concerns regarding an "outside porter who worked K2 block" between August 26 and October 23, 2014, threatening to assault or have someone assault plaintiff. (Doc. 85-2, Exh. B, Nolan Interr. Ans. #7).

The parties do not dispute that plaintiff was assaulted by a fellow inmate, Lorenzo Garcia, as plaintiff was being escorted from his cell in K2 North to the shower on the morning of

3

October 2, 2014. (*See* Doc. 12 at 7). There is no dispute that as plaintiff passed Garcia's cell 37 in K2 North, inmate Garcia swung a sock filled with AA batteries from inside his cell and struck plaintiff on the left side of plaintiff's head and back shoulder. (*Id.*). Defendants have submitted video footage of the incident. (Doc. 85-4, Exh. D).[2] Although the entire video lacks audio, the beginning of the video shows a correction officer, who defendants have identified as C/O Riddick[3], letting plaintiff out of his cell. Plaintiff is dressed in his bathrobe. C/O Riddick is seen bending down behind plaintiff to shackle plaintiff's feet as plaintiff faces forward down the walkway between the two rows of cells and toward the end of the cell block. (*Id.*, 08:39:01). As C/O Riddick is bent over with his head down, an inmate a few cells down, who has been identified as Garcia, extends both arms outside his cell bars into the walkway. (*Id.*, 08:39:04). An object is visible in his hands. He brings his left arm back in and leaves his right arm outside the cell, bent at an angle away from plaintiff with the object barely visible in his hand. (*Id.*). C/O Riddick finishes shackling plaintiff's feet, stands up, and starts escorting plaintiff down the cell block in the direction plaintiff has been facing and past Garcia's cell. (*Id.*, 08:39:20). Riddick is walking behind plaintiff. Approximately 4 seconds later, inmate Garcia swings the object in his hand twice at plaintiff using a backhand motion. (*Id.*, 08:39:22-28). Plaintiff ducks away but otherwise does not stop or change his pace as he continues down the cellblock. C/O Riddick looks into inmate Garcia's cell as he walks past but continues to escort plaintiff down the cell block. C/O Riddick and plaintiff reach the end of the cell block approximately 45 seconds later. (*Id.*, 08:40:09).

After Garcia struck him, plaintiff proceeded to the range shower and refused to come out

---

[2] Overall, plaintiff neither appears to dispute the contents of the video footage nor defendants' explanation of the footage. (*See* plaintiff's response in opposition to defendants' motion for summary judgment, Doc. 93 at 4-5).

[3] C/O Riddick is not a defendant to this lawsuit.

4

until he received medical attention. (Doc. 12 at 7). Plaintiff was seen by R/N Wiget while he stood in the shower. (*Id.*). Plaintiff explained to R/N Wiget the injuries he had sustained as a result of being hit in the head by Garcia. (*Id.*). The medical exam report shows that plaintiff informed medical staff that inmate Garcia hit his head and shoulder with a sock that had objects inside it. (Doc. 93-1 at 1; Doc. 85-7, Exh. G). According to the report, plaintiff informed medical staff, "I'm OK. I think." (*Id.*). The objective physical findings in the report were: "Slight redness to [the left] shoulder. Very small slightly raised bump to [the left] side of head. No open areas." (*Id.*). Plaintiff was assessed as a healthy adult male in no distress. He was advised to notify the medical staff if he experienced any changes in his vision, pain, or dizziness. (*Id.*). Plaintiff was given Ibuprofen and told he would be seen by the doctor. (*Id.*). There is no evidence that plaintiff sought follow-up medical treatment related to the incident.

After the incident, Garcia was found guilty of an administrative rule violation and placed in disciplinary confinement for 15 days. (Doc. 85-3, Exh. C). Garcia was also issued a separation order from plaintiff. (Doc. 85-6, Exh. F).

Plaintiff alleges that following the October 2, 2014 assault and other episodes of threats and harassment, defendants Perdas and Davis denied his request for protective custody. On October 23, 2014, defendant Perdas escorted plaintiff to defendant Davis's office for what plaintiff claims was an interview on his request to be moved to protective custody. (Doc. 12 at 8). Plaintiff requested protective custody because he claimed that inmates Stan and Bell were paying other inmates to physically harm him; he believed inmate Stan had a "close relationship" with defendant Nolan and K2 unit staff; Nolan had told other inmates that plaintiff was a "snitch"; and Swaney and other correction officers had allowed inmate Stan to harass plaintiff on September 13 and 25, 2014, and go through his personal mail to obtain family and friends'

5

addresses from old envelopes. (*Id.*). Plaintiff contends that Davis told him that all of his problems were "some 4/B Beef due to every 4/B Block I'm moved to I'm assaulted." (*Id.*). Plaintiff alleges that defendant Davis told him he would not receive protective custody, and when he asked for an appeal form to appeal her decision he was told the interview was not for protective custody. (*Id.*). However, Davis told plaintiff she would move him to "J-Side." (*Id.* at 8-9).

Plaintiff filed a grievance on November 11, 2014, with the Institutional Inspector and with defendant Cool alleging that defendants Davis and Perdas had violated the ODRC protective control policy and his due process rights on October 23, 2014. (*Id.* at 9). Defendant Cool denied the grievance on November 14, 2014, and told plaintiff to address the issue with his unit manager. (*Id.*). Cool took no further action on plaintiff's complaint. (*Id.*). The Institutional Inspector denied plaintiff's grievance on December 2, 2014. (*Id.*).

Plaintiff alleges that several months later on March 6, 2015, when he was housed in J-3 cell 31, C/Os Johnson and Englehardt searched the cells of two inmates, one of whom told plaintiff that Engelhardt advised the inmate that plaintiff had informed an SOCF officer that the inmates had contraband in their cells. (*Id.* at 11). Plaintiff alleges that when he asked Englehardt that same day why he told the inmates this, Englehardt replied that it had to be plaintiff who told the officer about the contraband because plaintiff is a "snitch." (*Id.*). Plaintiff claims that the following day, C/O Ferguson told the entire JS South unit that plaintiff was a "snitch" and he needed to get plaintiff out of the block. (*Id.* at 12). Plaintiff claims that on March 7 and 8, 2015, "AB" prison gang members threatened to have plaintiff physically harmed due to the officers' alleged lies. (*Id.* at 11-12). Plaintiff claims that from April 23 to April 26, 2015, C/O Johnson and C/O Englehardt "aided I/M Clark," a known and active member of the AB prison gang, in

6

harassing plaintiff. (*Id.* at 13). Plaintiff also alleges that on April 29, 2015, while C/O Johnson was escorting inmate Clark as he passed out food trays, Clark gave plaintiff a food tray containing food that had a light green tint to it and a "strong oder [sic] of state issued chemicals." (*Id.* at 13-14). When plaintiff told Johnson, "Y'all putting chemicals in my food now!," Johnson told plaintiff not to eat the food then and continued past his cell. (*Id.* at 14). Plaintiff attempted to mail some of the contaminated food to this Court in small plastic bags placed inside a manila envelope, but Johnson took the envelope without a cash slip attached and kicked the food tray containing the rest of the food out of plaintiff's reach. (*Id.* at 14-15).

## IV. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.* at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

7

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## V. Eighth Amendment claims

### 1. October 2, 2014 assault

Plaintiff's claim arising out of the October 2, 2014 assault by inmate Garcia is properly construed as a claim under the Eighth Amendment for failure to protect plaintiff from harm by other inmates. The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect an inmate from attack by other prisoners, a plaintiff must present evidence showing that the defendants' conduct amounted to "deliberate indifference" to a known risk of harm. *Farmer*, 511 U.S. at 837. *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

Deliberate indifference includes both objective and subjective elements. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). The objective element requires that the harm be "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element focuses on whether prison officials "had a sufficiently culpable state of mind." *Id.* This requires that prison officials know that inmates face a substantial risk of harm and "disregard[] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* "This burden is not light; even 'an official's failure to alleviate a significant risk that he should have perceived

9

but did not, while no cause for commendation, cannot . . . be condemned as punishment.'" *Shade v. City of Middletown*, 200 F. App'x 566, 569 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 838); *see also Perez v. Oakland Cty.*, 466 F.3d 416, 424 (6th Cir. 2006).

The Court turns first to whether plaintiff has produced evidence that is sufficient to create a genuine issue of material fact on the objective element of his failure to protect claim. This Court has previously acknowledged that "[t]here is some tension in Sixth Circuit case law on how to frame [the] objective inquiry" of an Eighth Amendment failure to protect claim. *Thorp v. Ohio Dept. of Rehab. and Correction*, No. 2:15-cv-1121, 2017 WL 661492, at *4 (S.D. Ohio Feb. 17, 2017); *Holder v. Saunders*, No. 13-38, 2014 WL 7177957, at *5 (E.D. Ky. Dec. 2014). "In one set of cases, the court looks only at whether the inmate suffered a sufficiently severe injury"; in another set of cases, "the Sixth Circuit examines whether there was an objectively substantial risk of harm to the inmate before the injury occurred." *Id.* (quoting *Holder*, 2014 WL 7177957) (citing *Curry*, 249 F.3d at 506); *Bishop*, 636 F.3d at 766). In determining whether "the types of conditions that constitute a substantial risk of serious harm" are present so as to satisfy the latter type of inquiry, the Court considers "the seriousness of the potential harm"; "the likelihood that the harm will actually occur"; and "evidence that unwilling exposure to that risk violates contemporary standards of decency." *Id.* (citing *Cunningham v. Ward*, No. 07-2648, 2007 WL 4209093, at *3 (W.D. Tenn. Nov. 27, 2007) (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

Neither the Court in *Holder* nor the Court in *Thorp* resolved the inconsistency in the Sixth Circuit line of cases because the plaintiff in those cases succeeded under either inquiry. In *Thorp*, the plaintiff alleged that he was attacked in an unsecured area of the prison known as "the mailbox walkway" or "deadman's corner." *Id.*, at *1. He claimed that prison officials knew he

10

or others could be harmed in the mailbox walkway as assaults there were "a known and common occurrence," but prison officials did nothing to prevent them. *Id.* The Court found that the plaintiff suffered a "sufficiently severe injury" in that he was knocked unconscious and sustained a concussion, facial lacerations that required stitches, and abrasions. *Id.*, at *5. The Court also found that there was "a substantial risk of serious harm" before the attack happened because the walkway area where the injury occurred posed such a risk. *Id.* (citing *Bishop*, 636 F.3d at 766). A majority of attacks in the prison occurred in the mailbox walkway; all but one of the attacks in the area happened during a short time frame around the same time the plaintiff's attack occurred; and the "seriousness of the harm was great" because the injuries incurred in prior attacks included "severe facial and head trauma" and transport of the inmate by ambulance to the hospital, an eye that was swollen shut and bleeding from the nostrils which also required that the inmate be transported by ambulance to the hospital, and injuries that required a month-long hospital stay. *Id.*

In *Holder*, the Court found that the plaintiff suffered a "sufficiently serious actual injury" after an inmate attacked him with a homemade weapon and caused injuries to his eye, head, neck hands and ankle and left him "bleeding from multiple wounds." 2014 WL 7177957, at *6. The Court also found that the plaintiff "was housed in conditions that posed a substantial risk of serious harm - the sort of harm that society does not tolerate." *Id.* (citing *Villegas v. Metro. Govt. of Nashville*, 709 F.3d 563, 568-69 (6th Cir. 2013)). The Court held that a reasonable jury could find that the assailant, who had an "untreated severe mental illness that made him prone to random attacks of violence, posed an objectively substantial risk of harm to inmates that he had access to on his housing unit," including the plaintiff. *Id.*

The Court need not resolve here whether the appropriate inquiry under the objective prong is the "sufficiently severe injury" inquiry or the inquiry into whether there was an "objectively substantial risk of harm" to plaintiff prior to the attack. *See Thorp*, 2017 WL 661492 (quoting *Holder*, 2014 WL 7177957). Plaintiff has not satisfied his burden under either possible inquiry. First, plaintiff did not suffer a sufficiently severe injury. The evidence shows that plaintiff suffered only "[s]light redness to [the left] shoulder" and a "[v]ery small slightly raised bump to [the left] side of [his] head," which was treated with ibuprofen. (Doc. 85-7, Exh. G). Though plaintiff was advised to notify the medical staff if he experienced any changes in his vision, pain, or dizziness (*Id.*), there is no evidence that plaintiff sought follow-up medical treatment related to the incident. The lack of serious injury is consistent with the video footage, which shows that the force of the impact was minor. (Doc. 85-4, Exh. D). Garcia swung the battery-filled sock with a backhand motion from inside his cell and apparently swiped plaintiff with it. Plaintiff ducked when the sock hit him, but plaintiff's motions do not suggest that he was hurt or in pain. Rather, after plaintiff ducked, he continued down the walkway at a normal pace as though nothing had happened. Based on this evidence, a reasonable jury could not find that plaintiff suffered a "sufficiently serious actual injury" that would satisfy the objective prong of his Eighth Amendment failure to protect claim.

Further, when construed in plaintiff's favor, the evidence does not support a finding that there was "an objectively substantial risk of harm" to plaintiff before the attack by Garcia. Plaintiff alleges that he informed defendant Perdas that he did not want to move to cell 39 because "I/M Stan aka Nuttie" and inmate Bell were paying other inmates to physically harm plaintiff. (Doc. 12 at 6). Plaintiff claims he told Nolan that "his outside porter I/M Stan AKA 'Nuttie Eye' had paid [i]nmates Garcia, Speakman and Ward to assault him when he was moved

12

to the top range." (*Id.*). Accepting as true that plaintiff's allegations that he informed defendants that he feared being assaulted by other inmates if he was moved, the video evidence, considered in conjunction with the other evidence produced by the parties, does not show that defendants thereafter exposed plaintiff to conditions that posed a "substantial risk of serious harm" to him. *See Thorp*, 2017 WL 661492; *Holder*, 2014 WL 7177957. Plaintiff has not produced any evidence to suggest that being escorted by a correction officer down the cell block walkway, past other inmates who were confined in their cells, created the potential for the harm plaintiff feared and the likelihood that such harm would actually occur. The circumstances as alleged by plaintiff and shown on the video do not suggest plaintiff was exposed to any risk of harm that "violates contemporary standards of decency." *Thorp*, 2017 WL 661492, at *4. Thus, plaintiff has not produced evidence that satisfies the objective element of his failure to protect claim.

Nor has plaintiff produced evidence to satisfy the subjective element of his failure to protect claim. The facts do not support a finding that defendants knew plaintiff faced a "substantial risk of harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Plaintiff claims he told defendants he would be harmed if he was moved to the new cell location. But there is no evidence that defendants Swaney, Perdas or Nolan were involved in the decision to move plaintiff to that location or that they had any control over his cell placement. Nor is there any evidence that these defendants had any involvement or control over plaintiff's movements once he was relocated and, specifically, on the day Garcia assaulted him. There is no dispute that defendants were not in the vicinity of the cell block to intervene or thwart the attack from the outset. *See Farmer*, 511 U.S. at 847 ("a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

abate it."). At the time of the assault, plaintiff was being escorted by C/O Riddick, who is not a party to this lawsuit and who is not alleged to have been aware of a risk of harm to plaintiff. The video footage indicates that C/O Riddick had no warning just prior to the attack that Garcia would assault plaintiff from inside his cell, and it further indicates that C/O Riddick had no opportunity to stop the attack. (*See* Doc. 934, Exh. D). Thus, plaintiff has not carried his burden "to produce evidence of deliberate indifference" on the part of any defendant for failure to protect him from inmate Garcia's attack on October 2, 2014. *See Ruiz-Bueno v. Scott*, 639 F. App'x 354, 361 (6th Cir. 2016) (plaintiff has the affirmative obligation to produce evidence of deliberate indifference).

Accordingly, plaintiff has not satisfied the objective or subjective component of his Eighth Amendment claim for failure to protect in connection with the October 2, 2014 incident. Defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim arising out of the October 2, 2014 assault by inmate Garcia.

### 2. Denial of protective custody and related grievances

Plaintiff claims that defendants Davis, Perdas and Cool violated his Eighth Amendment rights by denying his request for protective custody on October 23, 2014 and his subsequent related grievances. (Doc. 12 at 8-9). Plaintiff alleges that Perdas escorted him to an interview with Davis regarding his request for protective custody on that date. (*Id.* at 8). Plaintiff alleges that although Davis denied his request for protective custody at that time, she moved him to "J-Side." (*Id.* at 8-9). Plaintiff contends that Davis failed to protect him from "attacks from prisoners and harassment and retaliation by officers and prisoners at SOCF even though she had been notified" on October 2, 2014, October 23, 2014 and April 30, 2015. (*Id.* at 17). Plaintiff claims that defendant Cool showed deliberate indifference to his health and safety by failing to

14

protect him from attacks by other prisoners and from harassment and retaliation by officers. Plaintiff contends that he filed a grievance on November 11, 2014, with defendant Cool and the Institutional Inspector alleging that defendants Davis and Perdas violated the ODRC protective custody policy and his due process rights on October 23, 2014, and that he feared for his life due to inmates "placing a hit on him." (*Id.* at 9, 16-17). Plaintiff alleges that defendant Cool denied the grievance, told plaintiff to address the issue with his unit manager, and took no further action on plaintiff's complaint. (*Id.* at 9). Plaintiff asserts the Institutional Inspector denied plaintiff's grievance on December 2, 2014. (*Id.*). Plaintiff alleges that Cool caused him physical and mental pain and suffering. (*Id.* at 16-17).

Defendants are entitled to summary judgment on plaintiff's claims based on denial of his request for protective custody. Plaintiff does not allege that Perdas had any authority to grant or deny his request or that he was otherwise involved in the decision. Further, plaintiff has not shown that either the objective or the subjective component of an Eighth Amendment claim is satisfied for this claim as to any defendant. *See Curry*, 249 F.3d at 506; *Bishop*, 636 F.3d at 766. Plaintiff has not produced evidence to show that he suffered an actual injury or that he was exposed to a substantial risk of harm as a result of defendants' failure to act on his request. *See Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998) (finding no Eighth Amendment claim where "plaintiff primarily request[ed] monetary relief . . . in the form of compensatory and punitive damages" but the complaint contained no allegations that inmates who threatened the plaintiff "actually injured him physically"). In his response to defendants' motion for summary judgment, plaintiff alleges that he experienced only "mental pain" as a result of the denial of his request for protective custody. (Doc. 93 at 12). The evidence does not support a finding that defendants exhibited deliberate indifference to plaintiff's safety by denying his request for

15

protective custody and instead moving him to a different housing unit.

Further, to the extent plaintiff seeks to hold defendant Cool liable for denying his grievance related to his request for protective custody or otherwise failing to act on his complaint, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be held liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not shown that Cool violated his Eighth Amendment rights to the extent he alleges Cool denied his grievance and failed to take further action on it.

### 3. Alleged food contamination

Plaintiff claims that in April 2015, defendant Engelhardt and others encouraged and assisted inmate Clark to put chemicals in his food, which plaintiff was then served but did not eat. (*Id.* at 13-14). Plaintiff seeks to frame plaintiff's claim against Englehardt as a failure to protect claim for placing him in conditions where he faced a substantial risk of harm. (Doc. 93 at 19-20). Defendants argue that whether plaintiff's claim is construed as an Eighth Amendment claim for failure to protect or a claim challenging the conditions of his confinement, plaintiff cannot pursue the claim under the Prison Litigation Reform Act (PLRA) because he does not allege that he suffered a physical injury as a result of the alleged food contamination. (Doc. 85 at 11). Defendants further contend that plaintiff has produced no evidence to link defendant Englehardt to the alleged contamination. (*Id.* at 12-13).

The PLRA, 42 U.S.C. § 1997e(e), precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." *See*

*Merchant v. Hawk-Sawyer,* 37 F. App'x 143, 145 (6th Cir. 2002) (the plaintiff did not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit); *Williams v. Gobles,* No. 99-7701, 2000 WL 571936, at *2 (6th Cir. May 1, 2000) (under § 1997e(e), "a prisoner must show physical injury in order to maintain a civil action for any mental or emotional injury suffered while in custody"). Plaintiff does not contend that he suffered any physical injury as a result of the alleged food contamination but claims only that he suffered mental harm. (Doc. 12 at 5). Defendant Englehardt is entitled to summary judgment on plaintiff's food contamination claim on this ground.

Further, defendant Englehardt is entitled to summary judgment on plaintiff's claim because plaintiff has made only speculative and unsworn allegations, which are insufficient to create a genuine dispute as to whether Englehardt was involved in the alleged contamination of plaintiff's food. Plaintiff wants the Court to speculate that his food was contaminated with chemicals and that Englehardt played some role in the alleged contamination, which is not appropriate. *Nilles v. Givaudan Flavors Corp.,* 521 F. App'x 364, 371 (6th Cir. 2013) (quoting *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in the original)). Plaintiff has not presented a scintilla of evidence that links Englehardt to the claimed food contamination. Absent any evidence to show Englehardt was somehow involved in contaminating plaintiff's food, Englehardt is entitled to summary judgment on plaintiff's claim.

**IT IS THEREFORE RECOMMENDED THAT**

1. Defendant's motion for summary judgment (Doc. 85) be **GRANTED**.[4]

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 2/15/19

Karen L. Litkovitz
United States Magistrate Judge

---

[4] Defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court need not address whether defendants are entitled to qualified immunity because the record shows there is no genuine dispute that defendants did not violate plaintiff's Eighth Amendment rights, and defendants are therefore entitled to summary judgment.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
Plaintiff,

Case No. 1:16-cv-00515
Barrett, J.
Litkovitz, M.J.

vs.

WILLIAM COOL, et al,,
Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).